Jared Allebest, #13485
Attorney for Plaintiffs
1914 East 9400 South #256
Sandy, UT 84093
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SAVANNAH GONZALEZ, an individual SERGIO JESUS GONZALEZ, an individual, and Roes I-X <br><br> Plaintiffs, <br><br> vs. <br><br> LONE PEAK SURGERY CENTER, an organization, and ROES I-X. <br><br> Defendants. | COMPLAINT <br><br> Civil No. 2:21-cv-00517-CMR <br><br> Judge Cecilia M. Romero <br><br> Jury Trial Requested |

SAVANNAH GONZALEZ (hereinafter "Mrs. Gonzalez") and SERGIO JESUS GONZALEZ (hereinafter "Mr. Gonzalez""), by and through their attorney JARED M. ALLEBEST of the Allebest Law Group, hereby submits the following:

### PRELIMINARY STATEMENT

1.      Mr. and Mrs. Gonzalez, the Plaintiffs, are individuals who are Deaf and who are bilingual in English and American Sign Language.  They do not wear hearing aids or cochlear implants of any kind. On one or more occasions, the Defendants failed, or refused, to provide the requested accommodations for one or more of the Plaintiffs.

2.  The Defendants failed to establish, within their agencies and divisions, policies, practices, and procedures required under The Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18001 et seq. to ensure that persons who are

Deaf are not subjected to discrimination. Section 1557 of the Patient Protection and Affordable Care Act (ACA), ensures that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability), under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the Affordable Care Act or its amendments. 42 USC 18116(a). This includes, but is not limited to, Meaningful Use funds or Medicaid funds.

3. Medical facilities such as Lone Peak Surgery Center receive federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

4. Section 1557 is the nondiscrimination provision of the Affordable Care Act (ACA). The law prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs or activities. Section 1557 builds on long-standing and familiar Federal civil rights laws: Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975. (See 42 U.S.C. §18116(a-b). Specifically, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

5. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under. . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under,

any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

6. Section 1557 requires covered entities to give "primary consideration" to the person with a disability's choice of auxiliary aid or service. 81 Fed. Reg. 31421. Auxiliary aids and services can include, as appropriate, qualified interpreters, a variety of assistive technology devices, and the provision of materials in alternative formats. 45 C.F.R. § 92.4.

7. All covered entities, regardless of the number of employees, must provide appropriate auxiliary aids and services to people with impaired sensory, manual, or speaking skills, where necessary to afford those individuals an equal opportunity to benefit from the health program or activity. 45 C.F.R. § 92.202(b).

8. All covered entities, regardless of the number of employees, must provide appropriate auxiliary aids and services to people with impaired sensory, manual, or speaking skills, where necessary to afford those individuals an equal opportunity to benefit from the health program or activity. 45 C.F.R. § 92.202(b).

9. Additionally, the Plaintiff's primary language for communication is American Sign Language and not English. Both Plaintiffs have a limited ability to read, write, speak, or understand English, and are persons with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

10. Title VI of the Civil Rights Act of 1964 (Title VI, 42 USC sec 2000d (2016), which prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.

11. In the United States, patients with LEPs have a legal right to access health

care in their primary language. Title VI—as enforced by Executive Order 13166, entitled "Improving Access to Services for Persons with Limited English Proficiency"—is a cornerstone for the provision of oral interpretation and written translation services to patients with LEP.[1,2]

12. Failing or refusing to provide a medical patient with limited English proficiency with a language interpreter may be language discrimination under Section 1557 (45 C.F.R. § 92.4) since Department of Health and Human Services regulations require recipients of Federal financial assistance from HHS to take reasonable steps to provide meaningful access to Limited English Proficient (LEP) persons. (45 C.F.R. Section 80.3(b)(2).

13. The Department of Health and Human Services (HHS) establishes competencies required of a "qualified interpreter".[3] These competencies include the knowledge of specialized terminology and interpreter ethics and the skills to interpret accurately, effectively, and impartially. HHS requires that hospitals conduct an assessment of individuals claiming to have competencies prior to designating an individual as a qualified interpreter. HHS does not require that hospital staff serving as interpreters possess national certification, which is currently available in just a handful of spoken languages.[4] However, HHS clarifies that "the fact that an individual has above average familiarity with speaking or understanding a language other than English does

---

[1] Executive Order 13166. Improving access to services for persons with limited English proficiency. Fed Regist. 2000;65(159):50119-50122. https://www.justice.gov/crt/executive-order-13166. Accessed on January 14, 2021.
[2] Joint Commission. Language access and the law: Title VI of the US Civil Rights Act (1964).
[3] Nondiscrimination in health programs and activities: final rule. Fed Regist. 2016;81(96):31375-31473. https://www.gpo.gov/fdsys/pkg/FR-2016-05-18/pdf/2016-11458.pdf. Accessed January 14, 2021.
[4] National Board of Certification for Medical Interpreters website. http://www.certifiedmedicalinterpreters.org/. Accessed January 14, 2021.

not suffice to make that individual a qualified interpreter for an individual with limited English proficiency."[5] HHS now requires hospitals to include multilingual nondiscrimination notices ("taglines") on significant patient documents and to include information on their websites indicating how patients can access language assistance services.[6]

14. Section 504 and its regulations require that any entity which receives federal funds to ensure that "no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity." 34 C.F.R. § 104.4 (a) Furthermore, the entity "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap" refuse "a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service" or "otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 34 C.F.R. § 104.4 (b)(1)(vi,vii)

15. Additionally, Section 504 and its regulations states that the Defendants "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap" refuse "a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service" or "otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 34

---

[5] Nondiscrimination in health programs and activities, 31390-31391.
[6] Nondiscrimination in health programs and activities: final rule. Fed Regist. 2016;81(96):31375-31473. https://www.gpo.gov/fdsys/pkg/FR-2016-05-18/pdf/2016-11458.pdf. Accessed January 14, 2021.

C.F.R. § 104.4 (b)(1)(vi,vii).

16.    The Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its regulations when their agents, or employees, at various times and places have refused to provide effective communication with a patient who is Deaf.

17. As a medical facility, Lone Peak Surgery Center and its various medical facilities that owns, leases or controls "must operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, codes, and with accepted professional standards and principles that apply to professionals providing services in such a facility." 42 C.F.R. § 483.75(b).

18. In addition, Lone Peak Surgery Center is "obliged to meet the applicable provisions of other [Department of Health and Human Services] regulations, including but not limited to those pertaining to . . . nondiscrimination on the basis of handicap (45 C.F.R. part 84)." 42 C.F.R. § 483.75(c).

19. Defendants has violated Section 504 by denying the Plaintiffs, the benefits and services offered at Lone Peak Surgery Center on the basis of their disability. 45 C.F.R § 84.52(a)(1).

20. The Defendants provided the Plaintiffs benefits and services that are not equal to those afforded non-disabled individuals. 45 C.F.R § 84.52(a)(2) and/or providing the Plaintiffs with benefits or services that are not as effective as the benefits or services provided to others. 45 C.F.R § 84.52(a)(3) It also provided benefits or services in a manner that limits or has the effect of limiting the participation of Plaintiff. 45 C.F.R § 84.52(a)(4) and/or providing different or separate benefits or services to Plaintiff, based on their disability. 45 C.F.R § 84.52(a)(5).

21. The Defendants failed to take such steps as are necessary to ensure that Plaintiff was not denied effective notice concerning the benefits or services offered at Lone Peak Surgery Center because of their disability. 45 C.F.R § 84.52(b).

22. The Defendants failed to establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care. 45 C.F.R § 84.52(c) and failing to provide appropriate auxiliary aids to Plaintiff, an individual with impaired sensory, manual and speaking skills, where necessary to afford her an equal opportunity to benefit from the services offered at Lone Peak Surgery Center. 45 C.F.R § 84.52(d)(1).

23. Defendant's duties under Section 504 are mandatory and long-established. Defendant is deemed to have had knowledge of its duties at all times relevant herein. Defendant's failure to carry out these duties as alleged herein was willful and knowing and/or the product of deliberate indifference.

24. Defendants, jointly and severally (including various agencies and divisions), lease and operate places of "Public accommodation" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 36.104.

25. The Defendants (including their various agencies and divisions) are obligated by Title III of the ADA to ensure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." §28 CFR 36.201

26. ADA specifically states that the public accommodation such as the

Defendants "shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." 28 C.F.R § 36.202 "Activities."

27.    The Defendants "shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." Any interpreting agency that is under contract with the Defendant(s) is subject to common administrative control by Lone Peak Surgery Center by contract and must abide by the Defendant's policies, practices, and procedures because they have been hired to provide ASL interpreting services to patients who are Deaf or hard of hearing. 28 C.F.R. § 36.204 "Administrative methods."

28.    The Defendants failed to establish within their agencies and divisions, policies, practices, and procedures required under the ADA to ensure that persons who are Deaf are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to assure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate people with disabilities from the benefits of public programs or services.

29.     The ADA is a legislative response to the fact that "historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

30. The Defendants failed to establish within their agencies and divisions, policies, practices, and procedures required under the ADA and Section 504 to ensure that persons who are Deaf, are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to assure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate people with disabilities from the benefits of public programs or services.

31. Deaf persons are protected by the Americans with Disabilities Act not only as patients, but also as companions to patients who are seeking treatment. 28 C.F.R. § 36.303(c)(1).

32. Under the ADA, Video remote interpreting (VRI) service "means an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images." 28 C.F.R. § 36.104 "Video Remote Interpreting"

33. A public accommodation that chooses to provide "qualified interpreters via VRI service shall ensure that it provides real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that

delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; a sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her body position; a clear, audible transmission of voices; and adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f)(1-4).

34. VRI equipment uses computer technology, a microphone, and a camera to provide remote access to an interpreter via the internet.

35. With VRI, although the medical personnel and the patient are all in the same room, the interpreter is not physically present. Rather, the interpreter participates via a remote video connection similar to Skype or Facetime.

36. Because sign language is a purely visual language, any interruption in the clarity or fluidity of the video feed interrupts VRI communication in the same manner that poor fidelity, static, or "cutting out" interrupts spoken telephone communication.

37. Sign language is a three-dimensional language, so any rendering on a two-dimensional screen by definition reduces the quality of communication.

38. Because the camera is pointed at the deaf participant, the VRI interpreter typically cannot see any of the non-deaf participants. Therefore, if more than one non-deaf participant is speaking during the interaction, the VRI interpreter faces the same barriers in understanding as are typically faced during a conference call, for example, difficulty identifying who is speaking, difficulty hearing people who are located too far from the microphone, and background noise interfering with the intelligibility of the

person speaking.

39. On-site sign language interpreters carry no risk of such technical problems because they do not rely on technology to provide services.

40. Further, all sign language interpreters abide by a strict code of professional conduct, mandating that interpreters maintain a high level of confidentiality in all aspects of their work.

41. In this case, the Defendants utilized VRI to provide communication to the Plaintiffs, even when VRI is not the preferred format, seldom works appropriately, and not effective due to the sensitive nature, length, and complexity of the communication involved; and the context in which the communication is taking place. The VRI device at Lone Peak Surgery Center often did not function or functioned poorly, causing communication to be ineffective or break down entirely.

42. Defendant's duties under the ADA are mandatory and long-established. Defendant is deemed to have had knowledge of its duties at all times relevant herein. Defendant's failure to carry out these duties as set forth herein was willful and knowing and/or the product of deliberate indifference.

## JURISDICTION AND VENUE

43. This action arises under the law of the United States, including Title III of the Affordable Care Act, 42 U.S.C. § 18001 et seq. ("ACA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a ("Section 504"), Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and Title VI of the Civil Rights Act of 1964 (Title VI, 42 USC sec 2000d (2016), the Fourteenth Amendment of the U.S. Constitution (Section 1, Fourteenth Amendment), and the First Amendment of the U.S. Constitution.

The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. 1343(a)(3), as well as 42 U.S.C. § 12188(a) and 42 U.S.C. §12133, 29 U.S.C. § 794a and 42 U.S.C. § 2000d *et seq.* and 42 U.S.C. § 1983 for claims arising under color of law.

44.    Venue of this action is appropriate in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) and (c) as the claim arose in such district and, further, as the Defendants conduct business in such district.

## THE PARTIES

45.    Savannah Gonzalez became deaf at the age of eighteen (18) due to an automobile accident. Her primary mode of communication is American Sign Language and is English is not her primary language. As a result, she is regarded as "Limited English Proficient" (LEP) which simply refers to any individual who do not speak English as their primary language and have a limited ability to read, speak, write, or understand English.

46. Sergio Jesus Gonzalez was born deaf in Venezuela. As a result, he is regarded as "Limited English Proficient" (LEP) because he communicates in Venezuelan Sign Language (VSL) and American Sign Language (ASL). As a result, he does not speak English as his primary language and has a limited ability to read, speak, write, or understand English.

47.    Lone Peak Surgery Center is a multi-specialty ambulatory surgical center serving Draper, Utah, Salt Lake County, and other surrounding communities. It is a public entity as defined by the Americans with Disabilities Act (ADA), Section 504 of the

Rehabilitation Act (RA) and the Affordable Care Act (ACA). Lone Peak Surgery Center is located at 96 Kimballs Ln Suite 100, Draper, Utah 84020.

48. Plaintiffs are informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## FACTS

49.  On Friday April 16th, 2021, at 11:00am, Mrs. Gonzalez went in for a surgical procedure at Lone Peak Surgery Center. Lone Peak Surgery Center is located at 11925 State Street Draper, Utah 84020. Mrs. Gonzalez and/or her husband, Mr. Gonzalez, called the hospital several times to ensure a live interpreter would be present. (Exhibit #X) Approximately a week before the surgery, Mrs. Gonzalez received a call from someone at Lone Peak Surgery Center in which they gave her a date for her surgery and wanted to set up a time to conduct a COVID test. The Lone Peak employee then asked Ms. Gonzalez if she would like a live ASL interpreter and she stated that she did

want one. Ms. Gonzalez was ensured that a live ASL interpreter would be provided to her for her surgery.

50. About two days before her surgery, on approximately April 14th, 2021, Mrs. Gonzalez received a call from Lone Peak Surgery Center informing her that they had canceled the ASL interpreter, and she would either have to write or use their Video Remote Interpreter (VRI). The caller was named Kathy and her phone number is (801) 233-9300. Mrs. Gonsales replied that neither option was acceptable. She told them to call their agency to get the interpreter back. Kathy told Mrs. Gonzalez that she would not be rescheduling the ASL interpreter. Ms. Gonzalez hung up the phone in frustration. She then contacted her mother because her mother was a former ASL interpreter to explain what had just happened. Mrs. Gonzalez's mother decided to call Kathy to help explain that Lone Peak Surgery Center had an obligation to provide a live ASL interpreter. The mother explained that she had several ASL interpreting agency phone number and that she would be happy to give those phone numbers to her. Kathy declined to hear her mother's explanation that they were violating federal law for refusing to provide effective communication for her daughter. However, she was told that they did not provide ASL interpreters and that they would be happy to provide the ASL interpreter only if the ASL interpreter was willing to work for free.

51. Finally, on the morning of the surgery, after another call, Mrs. Gonzalez was informed that Lone Peak Surgery Center would have a live interpreter and that they would send her a text when confirmed. Mrs. Gonzalez never received a text. Mrs. Gonzalez and her family decided to go to the hospital early. She arrived for her appointment approximately thirty minutes early to discuss her surgery. When she

arrived at the hospital, she was informed by handwritten notes that the hospital had canceled the ASL interpreter again and that she would be forced to write or use their VRI.

52. Mrs. Gonzalez requested to speak with a manager so that she could explain that she needed a live interpreter, and that this really was unacceptable. Mrs. Gonzalez spoke with several different staff members and/or employees. They all gave her different reasons why she could not have a live interpreter. Some of the excuses she was given were there were no ASL interpreters available, the VRI iPad was good enough for her, the ASL interpreter had cancelled the appointment themselves, the doctor cancelled the ASL interpreter, and that it was too expensive to hire an ASL interpreter. Mrs. Gonzalez never got to speak with a manager or supervisor regarding her reasonable accommodation request for a live and in person ASL interpreter.

53. Mrs. Gonzalez wrote back and forth for over an hour with staff members and/or employees regarding her reasonable accommodation request for a live ASL interpreter. She told staff members and/or employees that she was going ahead with this surgery because she really needed this procedure done and was not going to wait another month or so to set it up again. She was informed that this was fine. She reiterated her request to speak with a manager since the denial of her request was in violation of her rights and that she may have to take legal action against them. She was then told by staff members and/or employees that her procedure would be cancelled unless she used their VRI interpreter. At this this point, Mrs. Gonzalez could see that she was going nowhere with her requests and was absolutely frustrated with their unwillingness to get her a live ASL interpreter. She gave up and accepted the VRI so

that she could get the surgery going.

54. At this point, Mrs. Gonzalez had been at Lone Peak Surgery Center for approximately two hours. She had talked to everyone she could about her request for an ASL interpreter. Even her OR tried to have her cancel the appointment because they wouldn't hire a live ASL interpreter. She insisted that they contact any one of the ASL interpreting agencies that operate in Utah. She was told that they couldn't hire an ASL interpreter because "They couldn't legally pay them for their services." She was again encouraged by Lone Peak staff members and/or employees to just cancel her appointment. Mrs. Gonzalez finally gave up fighting for the live interpreter and decided to get this over with and that she would fight this issue again later.

55. While in the operating room, VRI was provided to Mrs. Gonzalez. At one point, the VRI froze for a while before it went back to normal. However, Mrs. Gonzalez had a hard time following what the VRI interpreter was saying because everyone in the room was speaking over each other. The VRI interpreter also struggled to interpret because the interpreter had a hard time trying to keep up with all the speakers and wasn't sure who was speaking because she was not onsite to interpret for Mrs. Gonzalez. As a result, Mrs. Gonzalez felt like a lot of information was missed while she was in the operating room.

56. Ms. Gonzalez repeatedly asked the receptionist for the papers we had been using to write back and forth regarding her request for an ASL interpreter, but she was told that the doctors were still discussing her request and that she would get her papers later. She never got those documents back from the hospital.

57. Mrs. Gonzalez informed the staff members and/or employees of Lone Peak

16

Surgery Center that her husband was also Deaf and did not speak English very well because of his hearing loss. She also explained that he was from Venezuela and had recently moved to the United States about five years ago. As a result, Mr. Gonzalez struggles with reading English. She told staff members and/or employees to keep this fact in mind when they talked to her husband and that it would be best to hire a live ASL interpreter to keep him informed of the surgery. However, Mrs. Gonzalez discovered that the hospital communicated with her husband by pen and paper. Her husband didn't understand what they were trying to tell him. She was extremely frustrated with this because it was clear that they just ignored everything she told them about her husband. It was obvious that that they had no desire to provide effective communication to her or husband.

58. After Ms. Gonzalez had woken up from her surgery, they provided her with VRI to go over discharge instructions. However, it was difficult for her to understand anything because she was coming out of anesthesia and was also sick and groggy. As a result, focusing on, and understanding, the ASL interpreter was near impossible. After her surgery, she asked again for the papers they have been writing on and they apologized to her tell her that they had been thrown away. After that, they then brought her husband back to sign discharge papers, give prescriptions, and sent them home.

59. Mrs. Gonzalez subsequently sent a letter to the United States Department of Justice and the United States Department of Health and Human Services on May 28th, 2021 thinking that Lone Peak Surgery Center was associated with Lone Peak Hospital. (See Exhibit #2).

**<u>DEFENDANTS' PATTERN OF DISCRIMINATION WAS INTENTIONAL</u>**

60. Mrs. Gonzalez and/or Mr. Gonzalez are qualified individuals with a disability as defined by the ACA, Rehabilitation Act, and the ADA.

61. Starting April 16th, 2021 Defendants engaged in a pattern of intentional discrimination against Mrs. Gonzalez and Mr. Gonzalez by reason of their disability of being Deaf by not providing her an ASL interpreter in when requested in advance of her surgery. Her request was either forgotten or denied. Mrs. Gonzalez, along with her Deaf husband, Mr. Gonzalez, must be provided with effective communication.[7]

62. The VRI provided to Mrs. Gonzalez was not functioning properly as to provide effective communication prior to her surgery and/or after her surgery. Under the ADA, it is illegal to have VRI service that is not functioning properly.[8]

63. Defendants never completed an individualized analysis of Mrs. Gonzalez and/or Mr. Gonzalez's disability to determine a reasonable accommodation for effective communication.

64. Defendants were aware that refusing or not providing a live onsite ASL interpreter as requested a few weeks before the Plaintiff's scheduled medical appointment violated their federally protected rights.

65. Defendants were aware that providing defective VRI to the Plaintiffs violated their federally protected rights.

66. It was not an undue financial burden for Defendants to provide Mrs. Gonzalez and/or Mr. Gonzalez with a live onsite ASL interpreter for effective communication when it was requested a few weeks in advanced of their medical appointment.

---

[7] Deaf persons are protected by the Americans with Disabilities Act, Rehabilitation Act, and the Affordable Care Act not only as patients, but also as companions to patients who are seeking treatment. 28 C.F.R. § 36.303(c)(1).
[8] 28 C.F.R § 35.160(d)(1-4) (Title II) and 28 C.F.R § 36.303(f)(1-4) (Title III).

67. It would not fundamentally alter Defendants' services to provide an onsite ASL interpreter for the Plaintiffs for effective communication.

68. Defendant(s) decision to deny the Plaintiffs an ASL interpreter as requested a few weeks before the Plaintiffs scheduled medical appointment was intentional and/or negligent. There can be no more critical place in which a person is entitled to equal protection and equal participation than in the healthcare setting because decisions are made in medical facilities that may make a difference between life and death for a patient. For a patient with a hearing loss, a breakdown in communication between a medical provider and the patient can be fatal.[9] Unfortunately, only 17% of Deaf signers receive an interpreter in healthcare settings.[10]

69. Defendants did not provide equal services to the Plaintiffs like it did for hearing patients.

70. Defendants did not provide equal services for the Plaintiffs because of their disability of being Deaf.

71. Because of Defendants' intentional discrimination, the Plaintiffs suffered and continues to suffer severe emotional pain.

72. The record is clear that Defendants refused to provide effective communication to patients with a hearing loss and could not communicate as effectively as they could have with hearing patients. Thus, the Defendants, with deliberate and egregious indifference, deliberately failed to ensure that they could comply with their

---

[9] Otis, Ginger Adams. "Hospitals' failure to provide interpreter for deaf man led to his death, suit claims" Published on May 26, 2015. http://www.nydailynews.com/new-york/bronx/exclusive-deaf-man-died-hospitals-failed-suit-article-1.2235239 Accessed on March 18, 2018.

[10] Alexander, A., Ladd, P., & Powell, S. (2012). *Deafness might damage your health*. Lancet, 379(9820), 979–981. doi:10.1016/S0140-6736(11)61670-X as cited in Pertz, L., Plegue, M., Diehl, K., Zazove, P., & McKee, M. (2018). *Addressing mental health needs for deaf patients through an integrated health care model*. Journal of Deaf Studies and Deaf Education, 23, 240-248. doi: 10.1093/deafed/eny002

obligations under the Patient Protection and Affordable Care Act (ACA), Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, (ACA), and Title VI of the Civil Rights Act of 1964.

73. For Mrs. Gonzalez and/or Mr. Gonzalez, their own record shows that Defendants failed to provide in person qualified ASL interpreters despite Plaintiffs' many requests.  Defendants were put on notice of the needs of Plaintiffs on countless occasions during the course of Plaintiffs' medical treatment.

## FIRST CAUSE OF ACTION
(Injunction and Damages for Violation of The Patient Protection and Affordable Care Act (ACA))

74. The allegations in paragraphs 1-73 above and the below are incorporated herein by reference.

75.    The Defendants are subject to requirements of The Patient Protection and Affordable Care Act (ACA) because they receive federal funds to support services and/or programs, including, but is not limited to, Meaningful Use funds or Medicaid funds.

76.    The Plaintiffs are qualified individuals with a disability as defined by the Section 504 of the Rehabilitation Act and is subjected to discrimination because they are individuals with a disability.

77. Section 1557 of the Patient Protection and Affordable Care Act (ACA), ensures that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability), under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is

administered by an Executive Agency or any entity established under Title I of the Affordable Care Act or its amendments. 42 USC 18116(a).

78.    Defendants discriminated against the Plaintiffs because they are Deaf individuals and refused to provide ASL interpreters to establish effective communication with the Plaintiff.

79. The Plaintiff(s) asked the Defendants for a live onsite ASL interpreter a few weeks in advance of her medical appointment and her request was either forgotten or denied.

80. The VRI provided to the Plaintiffs for their medical appointments was not functioning properly as to provide effective communication to the Plaintiffs.

81. Defendants never completed an individualized analysis of Mrs. Gonzalez and/or Mr. Gonzalez's disability to determine a reasonable accommodation for effective communication.

82.    The Defendants failed to establish, within their agencies and divisions, policies, practices, and procedures required under The Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18001 et seq. to ensure that persons who are Deaf are not subjected to discrimination.

83.    Section 1557 requires covered entities to give "primary consideration" to the person with a disability's choice of auxiliary aid or service. 81 Fed. Reg. 31421. Auxiliary aids and services can include, as appropriate, qualified interpreters, a variety of assistive technology devices, and the provision of materials in alternative formats. 45 C.F.R. § 92.4.

84.    All covered entities, regardless of the number of employees, must provide

appropriate auxiliary aids and services to people with impaired sensory, manual, or speaking skills, where necessary to afford those individuals an equal opportunity to benefit from the health program or activity. 45 C.F.R. § 92.202(b).

85.    The Staff and Administrators, in all instances, individually and acting Defendants' agents, denied the Plaintiff's request to for an ASL interpreter.  They discriminated against them intentionally, recklessly and with malicious disregard for the Plaintiffs' federally protected rights, because they are Deaf individuals.

86. The acts or omissions of Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiff relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of The Patient Protection and Affordable Care Act (ACA).

87.     Because Plaintiffs are injured by the intentional acts of the Defendants and suffered from severe emotional distress (much more than a typical person could be expected to endure) they are entitled to compensation for such injuries.

88.    Furthermore, the Plaintiffs suffered actual financial loss by spending personal funds to travel to meet with their attorney which they would not have otherwise had to spend had the Defendants not prevented them from communicating with their doctors via a certified and qualified ASL interpreter by reason of their Deafness.

89.    The Plaintiffs have been forced to engage the services of an attorney.

Therefore, they are entitled to an award of the attorney's fees and cost

## SECOND CAUSE OF ACTION
(Injunction and Damages for Violation of Title VI of the Civil Rights Act)

90.     The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 89 hereof, and incorporate the same herein by reference.

91. The Defendants are a corporation or other private organization that receives federal funds such as Medicare, Medicaid and/or the State Children's Health Insurance Program (SCHIP). and is principally engaged in the business of providing health care. 42 U.S. Code § 2000d–4a(3). See also 45 C.F.R §80.13(3)(i)(A-B).

92. The Defendants violated Title VI of the Civil Rights Act for excluding the Plaintiffs from participation in, or denying the benefits of, the services, programs, or activities of a public entity. 45 C.F.R §80.3(b)(i-vii).

93. Defendants violated of Title VI of the Civil Rights Act through its discriminatory policies, practices, and procedures towards individuals with limited English Proficiency and/or on basis of his race and/or national origin.

94. Defendants violated Title VI of the Civil Rights Act through discriminatory administrative methods

95. Defendant failed to reasonable steps to make their programs, services, and activities accessible by eligible persons with limited English proficiency.

96. Title VI of the Civil Rights Act of 1964 requires the Defendant to provide meaningful access to services and equal care for people with Limited English Proficiency (LEP).

97. Defendant discriminated against Mr. Gonzalez on the basis of his race and/or national origin because he is from Venezuela and is an individual with Limited English

Proficiency (LEP) because he communicates in Venezuelan Sign Language (VSL) as well as American Sign Language (ASL) by refusing to provide a sign language interpreter or Certified Deaf Interpreter (CDI) which could not establish effective communication between the Plaintiff(s) and Defendant.

98. Ms. Gonzalez's surgery was not a medical emergency that would result in death or serious impairment of her health, and such service or other benefit cannot be provided except by or through a medical institution which refuses or fails to comply with 45 C.F.R §80.3(a). 45 C.F.R §80.3(e).

## THIRD CAUSE OF ACTION
(Injunction and Damages for Violation of Section 504 of the Rehabilitation Act)

99. The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 98 hereof, and incorporate the same herein by reference.

100. The Defendants are subject to requirements of section 504 because they receive federal funds to support services or programs.

101. The Plaintiffs are qualified individuals with a disability as defined by Section 504 of the Rehabilitation Act and is subjected to discrimination because they are individuals with a disability. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102). The Plaintiffs were qualified to participate in Defendant's aids, benefits, and services within the meaning of Section 504.

102. Defendants discriminated against the Plaintiffs because they are individuals who are Deaf and also by refusing to provide ASL interpreters which could not establish effective communication with the Defendants.

103. Plaintiff(s) asked the Defendants for a live onsite ASL interpreter a few weeks in advance of their medical appointment and their request was either forgotten or

denied.

104. The VRI provided to the Plaintiffs for their medical appointments was not functioning properly as to provide effective communication to the Plaintiffs.

105. Defendants never completed an individualized analysis of Mrs. Gonzalez and/or Mr. Gonzalez's disability to determine a reasonable accommodation for effective communication.

106. The Staff and Administrators, in all instances, individually and acting Defendants' agents, denied the Plaintiff's request to for an ASL interpreter. They discriminated against them intentionally, recklessly and with malicious disregard for the Plaintiffs federally protected rights, because they are Deaf individuals.

107. The acts or omissions of Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of Section 504.

108. Because the Plaintiffs are injured by the intentional acts of the Defendants and suffered from severe emotional distress (much more than a typical person could be expected to endure) they are entitled to compensation for such injuries.

109. Furthermore, the Plaintiffs suffered actual financial loss by spending personal funds to travel to meet with their attorney which he would not have otherwise

25

had to spend had the Defendants provided a live and in person ASL interpreter upon request.

110.  The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.

## FOURTH CAUSE OF ACTION
(Injunction and Damages for Violation of Title III of the ADA for excluding from participation in or denying the benefits of the services, programs, or activities of a public entity)

111.  The Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 110hereof, and incorporate the same herein by reference.

112.  Plaintiffs Mrs. Gonzalez and Mr. Gonzalez are qualified individuals with a disability as defined by the ADA and were subjected to intentional discrimination at the hands of Lone Peak Surgery Center and their employees and agents by reason of the Plaintiffs' disabilities.

113.  The Defendants discriminated against the Plaintiffs because of their disability by failing to, or refusing to, provide a qualified and certified American Sign Language Interpreter and/or Certified Deaf Interpreter (CDI) upon request in connection during their medical visits to Lone Peak Surgery Center.

114.  The ADA places a positive duty on Lone Peak Surgery Center and other similar medical organizations that lease and operate public places of accommodation and that provide services to the public, to assure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." §28 CFR 36.201.

26

115.   The Defendants' failure to obtain a qualified and certified American Sign Language Interpreter was a "denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." §28 CFR 36.202(a).

116. Both Plaintiffs asked the Defendants for a live onsite ASL interpreter at least week in advance of Mrs. Gonzalez's surgery at Lone Peak Surgery Center and their request was granted but then subsequently revoked by Lone Peak Surgery Center.

117. The VRI provided to the Plaintiffs for their medical appointments was not functioning properly as to provide effective communication to the Plaintiffs.

118. Defendants never completed an individualized analysis of Ms. Gonzalez's disability to determine a reasonable accommodation for effective communication.

119. The acts or omissions of the Defendants (or their agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much cherished independence. The injuries sustained by the Plaintiff relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of the ADA.

120.   Because the Plaintiffs, Mrs. and Mr. Gonzalez was injured and suffered from severe emotional distress (much more than a typical person could be expected to endure) and they are entitled to compensation for such injuries.

121.   Furthermore, the Plaintiffs suffered actual financial loss arising from hiring

an attorney and spending time, money, and resources to collect information and to obtain a resolution in this case.

122.   The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. §28 CFR 36.505.

**FIFTH CAUSE OF ACTION**
(Violation of Title III, ADA–Disparate Treatment by Reason of Disability)

123.   The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 122 hereof, and incorporates the same herein by reference.

124.   The Defendants have engaged in discrimination by segregating, singling out or subjecting the Plaintiffs to disparate treatment by reason of their Deafness.

125. Mrs. Gonzalez asked the Defendants for a live onsite ASL interpreter at least one week in advance of Mrs. Gonzalez's surgery at Lone Peak Surgery Center and their request was granted but then subsequently revoked by Lone Peak Surgery Center.

126. The VRI provided to the Plaintiffs for their medical appointments was not functioning properly as to provide effective communication to the Plaintiffs.

127. Defendants never completed an individualized analysis of Mrs. Gonzalez disability to determine a reasonable accommodation for effective communication.

128. Defendants did not provide equal services to the Plaintiffs like it did for hearing patients.

129. Defendants did not provide equal services for the Plaintiffs because of their disability of being Deaf.

130.   Due to the discriminatory policies, practices and procedures at Lone Peak

Surgery Center, the Defendants' excluded, denied services to, segregated, or otherwise treated differently the Plaintiffs by reason of their disabilities.

131.    The Plaintiffs were, and are, subjected to discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests.

132.    This real and tangible injury has caused the Plaintiffs, Mr., and Mrs. Gonzalez, to incur costs in the form of fees and interest from their personal funds to travel to meet with their attorney, funds which they would not have otherwise had to spend had the Defendants refused to provide a certified and certified ASL interpreter by reason of their Deafness.

133.    Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiff's much-cherished independence. The injuries sustained by the Plaintiff's relating to the discrimination at the Defendants' hands are ongoing until the discriminatory conditions are corrected by policy and the source of the affront and indignity is rectified.

134.    The Plaintiff have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.  §28 CFR 36.505.

### SIXTH CAUSE OF ACTION
(Violation of Title III, ADA–Discriminatory Policies, Practices and Procedures)

135.    The Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 134 hereof, and incorporate the same herein by reference.

136.    Defendants engaged in discrimination by failing to modify their policies, practices, and procedures to ensure equal access to persons who are Deaf. As a result,

by imposition or application of eligibility criteria that screen out, or tend to screen out, individuals with disabilities, specifically individuals who are Deaf, from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations including access to effective communication based on the needs of the individual and not a generalized assumption about a community.

137.   Furthermore, the Defendants discriminated by refusing to provide a certified and qualified ASL interpreter. As a result, they engaged in illegal administrative procedures towards Plaintiffs.

138. The VRI provided to the Plaintiffs for their medical appointments was not functioning properly as to provide effective communication to the Plaintiffs.

139. Defendants never completed an individualized analysis of Mrs. Gonzalez and/or Mr. Gonzalez's disability to determine a reasonable accommodation for effective communication.

140.   By policies, practices and procedures, the Defendants failed or refused to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities.

141.   Because of the Plaintiffs' disability, the Defendants denied them the ability to fully and equally participate in obtaining medical services from the Defendants that other non-disabled patients receive due to the Defendants' discriminatory behavior and practices.

142.   The Plaintiffs' was, and are, still being subjected to the discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom,

and other forms of intangible injuries to their dignity and interests.

143.   This real and tangible injury has caused the Plaintiffs, Mr., and Mrs. Gonzalez to incur costs in the form of fees and interest from their personal funds to travel to meet with their attorney, funds which they would not have otherwise had to spend had the Defendants refused to provide a certified and certified ASL interpreter by reason of their Deafness.

144.   Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much cherished independence. The injuries sustained by the Plaintiffs relating to the discrimination at the Defendants' place of public accommodation are ongoing until the discriminatory conditions are corrected by granting the access required by law.

145.   The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorney's fees and costs. §28 CFR 36.505.

## SEVENTH CAUSE OF ACTION
### (Injunction and Damages for Violation of Title III, ADA–Discriminatory Administrative Methods)

146.   The Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 145 hereof, and incorporate the same herein by reference.

147.   The Defendants engaged in discrimination by maintaining discriminatory and illegal administrative methods.  The Defendants discriminate by excluding people with disabilities.  Defendants have not taken such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals.

148.   Defendants have not properly trained employees as to the requirements

for affording effective communication under the ADA.

149.   Because of the disability of deafness, the Plaintiffs cannot fully and equally access the services offered by the Defendant.  The Plaintiffs are regularly subjected to such discrimination and their opportunities are unfairly limited when businesses effectively ban them because of their disabilities.

150.   The Plaintiffs are subjected to the discriminatory conditions present at Lone Peak Surgery Center. The Plaintiffs have suffered irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

151.   Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much cherished independence. The injuries sustained by the Plaintiffs relating to the discrimination at the Defendants' places of public accommodation are ongoing until the discriminatory conditions are corrected by either granting the access required by law or removing or shutting down the source of the affront and indignity.

152.   The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. §28 CFR 36.505.

### EIGHTH CAUSE OF ACTION
(Injunction and Damages for Violation of the First Amendment of the U.S. Constitution)

153.   The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 152 hereof, and incorporate the same herein by reference.

154.   The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the

freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

155. States have the authority to regulate certain professions, including the medical profession. To be able to practice medicine in a state, a doctor must obtain a license to practice.[11] The license is issued by a state board and carries with it certain obligations and responsibilities—most of which are concerned with protecting the vulnerabilities that are an inherent part of being a patient.[12]

156. Medical facilities such as Lone Peak Surgery Center receive federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a). Thus, the Defendants violated the Plaintiffs' right to speech in denying their request for an onsite ASL interpreter which prevented them from communicating with the surgeon and other medical professionals in their native language through an onsite ASL interpreter.

157. Medical facilities such as Lone Peak Surgery Center receive federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a). The Defendants violated the Plaintiffs' right to speech by denying them their federally protected rights in having effective communication with medical staff at Lone Peak

---

[11] E.g., Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 884 (1992) (plurality opinion) (noting that the practice of medicine is subject to "reasonable licensing and regulation by the state"); Wollschlaeger v. Governor of Fla. 760 F.3d 1195, 1218–19 (11th Cir. 2014) (quoting Casey, 505 U.S. at 884).

[12] E.g., Katharin McCarthy, Note, Conant v. Walters: A Misapplication of Free Speech Rights in the Doctor-Patient Relationship, 56 Me. L. Rev. 447, 465 (2004) ("[T]he states retain the power to regulate the professional conduct of physicians, even when speech may be used to carry the conduct out . . . .").

Surgery Center because of their disability.

158. American Sign Language (ASL) is a complete, natural language that has the same linguistic properties as spoken languages, with grammar that differs from English. ASL has regional accents and dialects; just as certain English words are spoken differently in different parts of the country, ASL has regional variations in the rhythm of signing, pronunciation, slang, and signs used. Other sociological factors, including age and gender, can affect ASL usage and contribute to its variety, just as with spoken languages.

159.   The Defendants denied the Plaintiffs the ability to fully engage in doctor-patient communication with the medical professionals at Lone Peak Surgery Center by denying their requests for an onsite Sign Language interpreter so that they can communicate with the surgeon and other medical professionals in their native language.

160.   The Defendants, denied individuals with a disability within its jurisdiction the equal protection of the laws when it refused to provide effective communication with an individual who is Deaf or to modify its policies, practices or procedures to accommodate a patient with a hearing loss.

161.   The Defendants and its Staff and Administrators, in all instances, individually and acting as their agents, denied the Plaintiffs' reasonable accommodation requests for an ASL interpreter, being unable to participate, understand or communicate in ASL and have effective communication with medical professionals at Lone Peak Surgery Center. They discriminated against these individuals by denying them their federally protected rights in having effective communication because of their disability.

162.   The acts or omissions of the Defendants (or its agents) caused the

Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of the First Amendment of the U.S. Constitution.

163.   The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 42 U.S.C. § 1988(b).

## NINTH CAUSE OF ACTION

(Injunction and Damages for Violation of the Fourteenth Amendment of the Constitution)

164.   The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 163 hereof, and incorporate the same herein by reference.

165.   Section 1 of the Fourteenth Amendment states that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

166.   The Defendants, Lone Peak Surgery Center denied a Deaf patient and her Deaf husband within its jurisdiction the equal protection of the laws when it refused to

provide effective communication with an individual who is Deaf as well as to their Deaf spouse who is a person who is an individual with Limited English Proficiency and discriminated against them on the basis of race and/or national origin

167.   The Defendants, in all instances, individually and acting as their agents, denied the Plaintiffs' reasonable accommodation requests for an ASL interpreter. They discriminated against these individuals with a disability by failing to ensure that the Plaintiffs could have effective communication with their doctor via an onsite ASL interpreter who would help facilitate communication with medical staff in their primary language.

168. The Defendants also discriminated against a Deaf individual by reason of his race and/or national origin as well as his status as an individual with Limited English Proficiency.

169. As a result, the Defendants failed to ensure the Plaintiff's federally protected rights in having effective communication with the medical staff at Lone Peak Surgery Center.

170.   The acts or omissions of the Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of Section 1 of Fourteenth Amendment of the U.S. Constitution.

171.   The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 42 U.S.C. § 1988(b).

### TENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

172. The Plaintiffs hereby incorporates the allegations in paragraphs 1 to 168 as if fully set forth herein.

173. Outrageous Conduct claims are described as causing an average member of the community would view the conduct and exclaim, "Outrageous!" *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381 (10th Cir. 1988); *Nelson v. Target Corporation*, 334 P.3d 1010 (Utah App. 2014) *Anderson Development Company v. Tobias*, et al, 116 P.3d 323 (Utah 2005).

174. Outrageous Conduct claims are available when a defendant engages in extreme and outrageous conduct, either recklessly or with the intent of causing the plaintiff severe emotional distress, and when the plaintiff incurred severe emotional distress caused by a defendant's conduct.

175. Defendants were aware that the Plaintiffs were Deaf and intentionally discriminated against them by refusing to provide them equal access to its facilities and services and despite the fact that a request for a live onsite ASL interpreter was made weeks prior to the scheduled medical appointment.

176. Medical professionals employed by Defendants could see that the VRI was not operating properly at medical appointments for the Plaintiffs. At one appointment, the lack of a functioning VRI caused one of the Plaintiffs to interpret for her family members so that they could understand the medical facts surrounding the minor child's

surgery and, as such, were aware that its decision to deny the Plaintiffs equal access was discrimination, and that such discrimination caused the Plaintiffs severe emotional distress.

177. The Defendants refused to provide effective communication to the Plaintiffs and the Plaintiffs could not communicate as effectively as they could have with hearing patients. Thus, The Defendants, with deliberate and egregious indifference, deliberately failed to ensure that they could comply with their obligations under the Americans with Disabilities Act, the Rehabilitation Act and the Patient Protection and Affordable Care Act (ACA).

178. Defendant's conduct was carried out with wanton, conscious, reckless, and outrageous disregard for Ms. Mullen's civil rights, mental health, and welfare.

179. Defendants outrageous conduct has directly and proximately caused the Plaintiff's injury and they are entitled to damages and relief to the fullest extent permitted by law and according to proof at trial.

## ELEVENTH CAUSE OF ACTION
(Battery)

180. The Plaintiffs hereby incorporates the allegations in paragraphs 1 to 179 as if fully set forth herein.

181. Defendant, its agents, and medical personnel operating within its facilities performed medical procedures on Savannah Gonzalez.

182. Defendant had a duty to provide effective communication of material information to Plaintiff Savannah Gonzalez sufficient to allow for informed consent by them to any procedures performed at Defendant's facilities or by Defendant's agents.

183. Defendant breached its duty to provide sufficient information for and to

obtain informed consent from Plaintiff Savannah Gonzalez.

184. As conveyed to Defendant prior to their treatment, Savannah Gonzalez required a live ASL interpreter because to understand, consent to, or participate in their medical treatment.

185. Without effective communication, Savannah Gonzalez was incapable of giving informed consent for their medical treatments.

186. Defendant willfully disregarded Savannah Gonzalez's right to informed consent and nonetheless performed procedures on Savannah Gonzalez.

187. The procedures performed on Savannah Gonzalez included medical techniques and procedures that caused contact with the Plaintiffs, which contact was harmful or offensive as it was not performed with or within appropriate informed consent provided by the patients.

188. As a result of the Defendant's failure to obtain appropriate informed consent from Plaintiffs Savannah Gonzalez, Defendant's performance of procedures that were not performed with or within appropriate informed consent provided by the Plaintiff, Plaintiff Savannah Gonzalez suffered harm and damages.

189. Plaintiff Savannah Gonzalez are entitled to recover all of their actual, compensatory, consequential, and incidental damages resulting from Defendant's wrongful conduct as described herein.

190. Also, the Defendant's wrongful conduct was extreme, outrageous, malicious, willful, and performed with an evil intent with conscious disregard of the risk of serious harm to Plaintiff Savannah Gonzalez, meaning that the Plaintiff are entitled to recover punitive damage from Defendant in an amount sufficient to punish the

Defendant and to deter similarly situated persons or entities from like future conduct.

## TWELFTH CAUSE OF ACTION
(Professional Negligence)

191. The allegations in paragraphs 1-190 above and the below are incorporated herein by reference.

192. Defendants owed the Plaintiff a duty to exercise reasonable care and diligence to assure provide effective communication to the Plaintiffs who are Deaf.

193. The duties that the defendants owed to the Plaintiff include, but are not limited to:

a. Assure that the Plaintiffs were provided with an American Sign Language interpreter at all of their medical visits with the Defendants;

b. Assure that live onsite ASL interpreters are qualified and certified to interpret for Deaf patients;

c. Assure that medical facilities do not rely on an adult accompanying an individual with a disability to interpret or facilitate communication;

d. Assure that companions accompanying a Deaf patient are provided with a certified and qualified ASL interpreter to help the Deaf patient understand any and all medical procedures that they, or their children, were required to undergo;

e. Assure that the VRI provided to patients with a hearing loss for their medical appointments are functioning properly as to provide effective communication to the Plaintiffs;

f. Assure that medical facilities complete an individualized analysis of the patient's hearing disability to determine a reasonable accommodation for effective communication;

g. To comply with all state and federal antidiscrimination laws requiring place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation to provide effective communication to a patient with a hearing loss.

194. The Plaintiffs have suffered damages as a result of the Defendants' negligence.

195. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.

### ***Prayer for Relief***

### On the Plaintiff's First Cause of Action:

(a) That this Court declare that the Defendant(s), Lone Peak Surgery Center are subject to the requirements of section The Patient Protection and Affordable Care Act (ACA);

(b) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Section 1557 of the Affordable Care Act'

(c) That actions and failures to act of the Defendant(s), including agencies employees and agents, violated the ACA's mandate that individuals with disabilities shall not be excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability), under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an

41

Executive Agency or any entity established under Title I of the Affordable Care Act or its amendments. 42 USC 18116(a);

(d) For an order requiring the Defendant(s) to adopt a comprehensive policy regarding communication access for communication with members of the public who are Deaf and hard of hearing based on the needs of the individual members of the public. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(e) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

(g) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the

conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

(h) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(i) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(e) For an order for the Defendant(s) to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(j) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Section 1557 of the Affordable Care Act;

43

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

(l) For an order for the Defendant(s) to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(m) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(n) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(o) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(p) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzales' attorney fees, including litigation expenses, and costs of suit; and

(q) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On their Second Cause of Action:

(a) That this Court declare that the Defendant(s), Lone Peak Surgery Center are subject to the requirements of section Title IV of The Civil Rights Act.

(b) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Title IV of The Civil Rights Act

(c) For an order requiring the Defendant to adopt a comprehensive policy regarding communication access for communication with members of the public who are individuals with Limited English Proficiency (LEP) by reason of their disability or by reason of their race and/or national origin. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(e) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons and/or for individuals with Limited English Proficiency.

(g) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications

equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(i) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(j) For an order for the Defendant(s) to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing or who are individuals with Limited English Proficiency due to their race and/or national origin under Title IV of The Civil Rights Act.;

(l) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors as well as those who are individuals with Limited English Proficiency due to their race and/national origin to the Defendant's facilities;

(m) For an order for the Defendant(s) to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain

technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(n) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(o) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(p) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(q) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and;

(r) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiff's Third Cause of Action:

(a) That this Court declare that the Defendants, Lone Peak Surgery Center are subject to the requirements of section 504 of the Rehabilitation Act.

(b) That actions and failures to act of Defendants, including agencies employees and agents, violated Section 504's mandate "from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity" by reason of their deafness;

(c) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act;

(d) For an order requiring the Defendant to adopt a comprehensive policy regarding communication access for communication with members of the public who are Deaf and hard of hearing based on the needs of the individual members of the public. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(e) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

(g) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with

appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

(h) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(i) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(j) For an order for the Defendant(s) to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Section 504 of the Rehabilitation Act;

(l) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative

49

means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

(m) For an order for the Defendant(s) to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(n) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(o) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(p) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(q) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and;

(r) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiff's Fourth Cause of Action:

(a) That this court exercise jurisdiction over this entire action;

(b) That this Court declare that the actions and failures to act of Defendants, including agencies, employees, and agents, violated the Americans with Disabilities Act's mandate to refrain from excluding "from participation in, be denied the benefits of,

or otherwise be subjected to discrimination under any program or activity" by reason of their deafness;

(c) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act by excluding the Plaintiffs "from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity" by reason of their deafness;

(d) For an order requiring the Defendant to adopt a comprehensive policy regarding communication access for members of the public who are Deaf and Hard of Hearing. If such a policy exists, an order requiring the administration to train its staff and agents including any Officers of the Law in the application of such a policy;

(e) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing

persons;

(g) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

(h) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(i) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(j) For an order for the Defendant(s) to create and maintain a list of American

52

Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Title III of the Americans with Disabilities Act;

(l) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

(m) For an order for the Defendant(s) to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(n) For an order requiring the Defendants to compensate the Plaintiffs for actual losses and the substantial emotional distress the Defendants' actions caused to Mrs. Gonzalez and Mr. Gonzalez;

(o) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(p) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(q) For an order awarding the costs of this action and reasonable attorney's fees

to Plaintiffs Mrs. Gonzalez and Mr. Gonzalez, and;

(r) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On the Plaintiff's Fifth Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendants, Defendants' agents, employees and assigns from discrimination and disparate treatment on the basis of disability in violation of Title III of the Americans with Disabilities Act; and specifically requiring the Defendants to adopt policies, practices and procedures that are fully compliant with the Americans with Disabilities Act;

(b) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act though its disparate treatment of the Plaintiffs reason of their disability;

(c) For an order requiring the Defendants to change their discriminatory policies, practices, and procedures in order to ensure that individuals who are deaf are not discriminated against by staff, employees, and agents and to ensure that people who are Deaf are actively accommodated in ways that afford them full participation in medical services and activities in a manner that is equal to that afforded persons without disabilities;

(d) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective

communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(e) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

(g) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications

equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(h) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(i) For an order for the Defendant(s) to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(j) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Title III of the Americans with Disabilities Act;

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

(l) For an order for the Defendant(s) to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(m) For actual costs and compensatory damages for injuries caused by the

Defendants' failure or refusal to comply with federal law;

(n) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(o) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(p) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzalez legal fees, including litigation expenses, and costs of suit; and

(q) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On the Plaintiff's Sixth Cause of Action:

(a) For a declaration that the Defendants is in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act; and specifically requiring Defendants to cease policies, practices and procedures that are not fully compliant with the Americans with Disabilities Act;

(b) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans;

(c) For an order requiring the Defendants to change their discriminatory administrative methods in order to assure that individuals who are Deaf are not discriminated against by staff, employees, and agents by allowing persons who are

Deaf to participate in medical services and activities in a manner that is equal to that afforded persons without disabilities;

(d) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(e) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient

where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

(g) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(h) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(i) For an order for the Defendant(s) to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(j) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Title III of the Americans with Disabilities Act;

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

(l) For an order for the Defendant(s) to train its employees, staff, and other

59

agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(m) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(n) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(o) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(p) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzalez's legal fees, including litigation expenses, and costs of suit; and

(q) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiff's Seventh Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendants, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act; and specifically requiring Defendants to cease all policies, practices and procedures that are not fully compliant with the Americans with Disabilities Act;

(b) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of

Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans through its discriminatory administrative methods towards patients with a hearing loss;

(c) For an order requiring the Defendants to change their discriminatory administrative methods in order to ensure that individuals who are Deaf are not discriminated against by staff, employees, and agents by allowing persons who are Deaf to participate in medical events and activities in a manner that is equal to that afforded persons without disabilities;

(d) For an order for the Defendant(s) to develop, promulgate, implement, and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

(e) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law.  This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

(f) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and

characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

(g) For an order for the Defendant(s) to provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

(h) For an order for the Defendant(s) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

(i) For an order for the Defendant(s) to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

(j) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing

under Title III of the Americans with Disabilities Act;

(k) For an order for the Defendant(s) to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

(l) For an order for the Defendant(s) to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

(m) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(n) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(o) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(p) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzalez's legal fees, including litigation expenses, and costs of suit; and

(q) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On the Plaintiff's Eighth Cause of Action:

(a)     That this Court declare that the Defendants are subject to the

requirements of the First Amendment of the U.S. Constitution;

(b)      That this Court declare the actions and failures to act of the Defendants, including its agencies, employees, and agents, violated the First Amendment's mandate to not deprive any individual of "the freedom of speech" by reason of their disability;

(c)      Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination depriving the Plaintiffs of "the freedom of speech" by reason of their disability, or status as an individual with Limited English Proficiency, or by reason of their race and/or national origin;

(d)      That this Court declare that the Plaintiffs have a Constitutional and federal statutory right to have effective communication in their primary language of ASL with their medical professionals through an ASL interpreter as equally as nondisabled patients which is a fundamental right and therefore, subject to heightened scrutiny; that a deaf citizen has the right to have effective communication in order to access oral information from his or her doctor, surgeon or other medical professional to obtain quality health care because without access through an ASL interpreter, the deaf patient's ability to participate in his own medical decisions is severely impaired; that an ASL interpreter or other means of effective communication shall be provided at medical facilities owned, leased, or operated by the Defendants in order to afford the Deaf citizen the ability to engage in obtaining medically relevant information that will assist him or her in making an informed decision about their medical treatment;

(e)      That this Court declare that the right to "linguistic freedom" by communicating in American Sign Language (ASL) is encompassed in the First

Amendment right to freedom of speech either by reason of their disability, or by reason of their race and/or national origin, or by reason of their status as an individual with Limited English Proficiency, or by reason of their race and/or national origin;

(f)     For an order requiring the Defendants, to adopt a comprehensive policy regarding modifying its policies, practices, and procedures with patients with a hearing loss based on the needs of the individual members who are patients of their facility, and adopt a comprehensive policy regarding modifying its policy, practices, and procedures for individuals with a hearing loss or who are individuals with Limited English Proficiency. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(g)     For an order granting preliminary and permanent injunctions, enjoining the Defendants from further violations of the First Amendment of the United States Constitution;

(h)     For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(i)     For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court. 42 U.S.C. § 1988(b).

<u>On the Plaintiff's Ninth Cause of Action:</u>

(a)     That this Court declare that the Defendant, Lone Peak Surgery Center are subject to the requirements of the Fourteenth Amendment of the U.S. Constitution;

(b)     That actions, and failures to act, of Lone Peak Surgery Center, including its agencies, employees, and agents, violated the Fourteenth Amendment mandate to not deprive "any person within its jurisdiction the equal protection of the laws" by reason

of their disability, or status as an individual with Limited English Proficiency or, by reason of their race or national origin;

(c) The Defendants are a corporation or other private organization that receives federal funds such as Medicare, Medicaid and/or the State Children's Health Insurance Program (SCHIP). and is principally engaged in the business of providing health care. 42 U.S. Code § 2000d–4a(3). See also 45 C.F.R §80.13(3)(i)(A-B).

(d)    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies, and procedures have subjected Plaintiffs to discrimination depriving the Plaintiffs of "the equal protection of the laws" by reason of their disability, or status as an individual with Limited English Proficiency, or by reason of their race and/or national origin;

(e)    For an order requiring the Defendant to adopt a comprehensive policy regarding modifying its policy, practices and procedures with patients who are Deaf, or are individuals with Limited English Proficiency, and patients who are individuals with Limited English Prophecies by reason of their race or national origin. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(f)    For an order granting preliminary and permanent injunctions, enjoining the Defendants from further violations of the Fourteenth Amendment of the United States Constitution;

(g) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and

(h) For such other and further relief (both under law and under the Court's broad

equitable jurisdiction) deemed appropriate by the Court. 42 U.S.C. § 1988(b).

**On the Plaintiff's Tenth Cause of Action:**

(a) For a declaration that the Defendants have engaged in Intentional Infliction of Emotional Distress by engaging in extreme and outrageous conduct, either recklessly or with the intent of causing the plaintiff severe emotional distress, and when the plaintiff incurred severe emotional distress caused by a defendant's conduct by failing to provide effective communications for a patient who is deaf or hearing impaired.

(b) For a declaration that the Plaintiffs are not required to report to Department of Professional Licensing ("DOPL") as required by the Utah Healthcare Malpractice Act because her claim does not fall under the causes of action specifically enumerated in 78B-3-403(1) of the Utah Health Care Malpractice Act since the Plaintiff's claims are injuries sustained from the violation of her civil rights under the Affordable Care Act (ACA), Section 504 of the Rehabilitation Act, Americans with Disabilities Act (ADA), the First Amendment and/or the Fourteenth Amendment.

(c) For actual costs and compensatory damages for injuries caused by actual and proximate cause of the Defendant's breach of duty owed to the Plaintiff;

(d) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(e) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(f) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzalez's legal fees, including litigation expenses, and costs of suit; and

(g) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

<u>**On the Plaintiff's Eleventh Cause of Action:**</u>

(a) For a declaration that the Defendants have engaged in battery by intending to cause a harmful or offensive contact with the person and causes harmful or offensive contact with the person by failing or refusing to provide effective communications for a patient who is deaf or hearing impaired.

(b) For a declaration that the Plaintiffs are not required to report to Department of Professional Licensing ("DOPL") as required by the Utah Healthcare Malpractice Act because her claim does not fall under the causes of action specifically enumerated in 78B-3-403(1) of the Utah Health Care Malpractice Act since the Plaintiff's claims are injuries sustained from the violation of her civil rights under the Affordable Care Act (ACA), Section 504 of the Rehabilitation Act, Americans with Disabilities Act (ADA), the First Amendment and/or the Fourteenth Amendment.

(c) For actual costs and compensatory damages for injuries caused by actual and proximate cause of the Defendant's breach of duty owed to the Plaintiff.

(d) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(e) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(f) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzalez's legal fees, including litigation expenses, and costs of suit; and

(g) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On their Twelfth Cause of Action:

(a) For a declaration that the Defendants have engaged in professional negligence by breaching the duty owed to the Plaintiff by failing to provide effective communications for a patient who is deaf or hearing impaired.

(b) For a declaration that the Plaintiffs are not required to report to Department of Professional Licensing ("DOPL") as required by the Utah Healthcare Malpractice Act because her claim does not fall under the causes of action specifically enumerated in 78B-3-403(1) of the Utah Health Care Malpractice Act since the Plaintiff's claims are injuries sustained from the violation of her civil rights under the Affordable Care Act (ACA), Section 504 of the Rehabilitation Act, Americans with Disabilities Act (ADA), the First Amendment and/or the Fourteenth Amendment.

(c) For actual costs and compensatory damages for injuries caused by actual and proximate cause of the Defendant's breach of duty owed to the Plaintiff;

(d) to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

(e) interest on all amounts at the highest rates and from the earliest dates allowed by law;

(f) For the Plaintiffs, Mrs. Gonzalez and Mr. Gonzalez's legal fees, including litigation expenses, and costs of suit; and

(g) For such other and further relief (both under law and under the Court's broad

equitable jurisdiction) deemed appropriate by the Court.

/s/: Jared Allebest
Jared Allebest, #13485
Attorney for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served this 31st day of August 2021, by electronic notice to:

Jennifer S. Park
Counsel for Defendant
Dentons Cohen &Grigsby P.C.
625 Liberty Avenue, 5th Floor
Pittsburg, PA 15222-3152

Lone Peak Surgery Center
96 Kimballs Ln, Suite 100
Draper, Utah 84020

/s/: Jared Allebest
Jared Allebest, #13485
Attorney for Plaintiffs
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

# EXHIBIT #1

| LONE | PEAK | (801) 984-3691 | Apr 15 | 11:31 AM | 04:24 |
|------|------|----------------|--------|----------|-------|
| Foothill | Cottonwood | (801) 365-1032 Main | Apr 14 | 05:55 PM | 02:30 |
| Foothill | Cottonwood | (801) 365-1032 Main | Apr 14 | 05:20 PM | 00:00 |
| Foothill | Cottonwood | (801) 365-1032 Main | Apr 14 | 05:19 PM | 00:09 |
| Foothill | Cottonwood | (801) 365-1032 Main | Apr 14 | 11:41 AM | 01:22 |
| Foothill | Draper | (385) 900-4090 Main | Apr 12 | 02:05 PM | 03:51 |
| LONE | PEAK | (801) 984-3691 | Apr 12 | 12:53 PM | 02:48 |
| LONE | PEAK | (801) 984-3691 | Apr 12 | 11:22 AM | 03:28 |
| LONE | PEAK | (801) 984-3691 | Apr 12 | 11:20 AM | 01:21 |





# EXHIBIT #2

May 28, 2021

US Department of Justice
950 Pennsylvania Avenue, NW
Civil Rights Division
Disability Rights Section – 1425 NYAV
Washington, D.C. 20530

To Whom It May Concern:

I would like to file a civil rights complaint with the Office of Civil Rights within the U.S. Department of Justice. My name is Savannah Gonzalez, and I am an individual who is Deaf and have a limited ability to read, speak or understand English.

On Friday April 16th, at 11:00am, I went in for a surgical procedure at Lone Peak Hospital in Draper. We called several times to ensure a live interpreter would be present. Week before the surgery I was called giving me a day for the surgery, and to set up the covid test. Then they asked if I would like a live interpreter, which I did want. They insured me then that I would have one. About 2 days before the procedure, I was called to say the had canceled the interpreter and I would either have to write or use their iPad interpreter. (which I have told them were not options) I told them to call their agency to get the interpreter back. The woman I was on the phone with said no. Hanging up in frustration, I contacted my mother (a former interpreter to explain the frustration) She decided to call the same lady to help insure they understand the rights for deaf to have a live interpreter. She contacted a woman named Kathy (Phone number: 801-233-9300) She explained that she had several agency phone numbers she'd be happy to give them for a onetime on the job interpreting. Explaining that they did not need to be contracted for one-time jobs. They refused again saying only if the interpreter did it for free would they hire anyone.

Finally, morning-of, after another call, they said they would have a live interpreter and would send a text when confirmed. I never received a text. So me and my family decided to arrive early. I arrived for my appointment 30 minutes early to discuss but through writing on loose papers they said they canceled the interpreter again and that I would be forced to write or use iPad. But when I went back for the surgery I was not allowed to write because after coming out of anesthesia it was non trustworthy. In writing I then requested a manager to talk to so I could explain that I needed a live interpreter, and that this really was unacceptable. I talked with several different people and all told me different reasons why I could not have a live interpreter with excuses including: no interpreters available, iPad was good enough, interpreter cancelled themselves, doctor cancelled the interpreter, even told it was to much money, etc. Never once they bring me a manager or supervisor.

I wrote back and forth for over an hour where they still refused me an interpreter. Frustrated, I told the receptionist I would continue to write so that I could have the procedure done (no iPad interpreter) because I really needed this procedure done and was not going to wait another month or so to set it up again. They said that was fine. I then wrote to the receptionist to give to the manager/boss that this was against several ADA Laws and that I would have to take legal action. I was then told my procedure would be cancelled unless I used their iPad interpreter. In absolute frustration I accepted the iPad so we could get this procedure over with. I had been there close to two hours by this point. Even the OR doctor tried to have me cancel the appointment because they wouldn't hire an interpreter. And my husband took off work for to watch baby in the lobby so we really couldn't afford to postpone it.

Speaking through the iPad interpreter, I refused and told them to contact another agency. Which they responded again saying they couldn't do unless the interpreter came for free because "they couldn't

1

legally pay them for their services." Where again I was encouraged to just cancel my appointment. I finally gave up fighting for the live interpreter and decided to get this over with and fight it later.

Doctor leaving to prep, I went back to the lobby to wait for my procedure. I asked the receptionist (Different lady this time) for the papers we had been using to write back and forth on so I could "show my husband" (real intension wanting it as proof) they said the doctors were still discussing them and that I would have to wait. I asked 4 times. Still no papers. I was then taken back to OR room where they said I could get papers when I was done.

Both my husband and 3 month old baby had to wait in the lobby, not allowed to leave because they told us "it was easier for them to get him, rather then using his video phone to call him when my procedure was over." My husband English is not good. (He is from Venezuela originally, moved here 5 years ago.) written English is not easy to understand. Which I told the doctors through the interpreter to please keep in mind when they talk to him. They would have to have a live interpreter or iPad at least, as to pass along information to him about when I'd be done or how it went. Later, after coming out of anesthesia, he told me they would only write to him. which he expressed to who was writing to him that he did not understand. But nothing was changed nor did they care and left.

Once I had woken up, they called an interpreter on the iPad to go over discharge information. But having just woken up from being under anesthesia I did not understand much of anything being said. Being very sick and groggy, focusing and understanding the interpreter was near impossible. After my operation I asked again for the papers we'd been writing on and they apologized and said they had been thrown away. After that, they then brought my husband back to sign discharge papers, give prescriptions, and sent us home.

Sincerely,


Savannah Gonzalez


cc: Jared Allebest, Attorney
UT Bar #13485
8978 South Quarry Stone Way
Sandy Utah 84094
Phone: (949) 322-3991
VP: (801) 204-9055
Jared@Allebest.com

2

May 28, 2021

U.S. Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

To Whom It May Concern:

I would like to file a civil rights complaint with the Office of Civil Rights within the U.S. Department of Health & Human Services. My name is Savannah Gonzalez, and I am an individual who is Deaf and have a limited ability to read, speak or understand English.

On Friday April 16th, at 11:00am, I went in for a surgical procedure at Lone Peak Hospital in Draper. We called several times to ensure a live interpreter would be present. Week before the surgery I was called giving me a day for the surgery, and to set up the covid test. Then they asked if I would like a live interpreter, which I did want. They insured me then that I would have one. About 2 days before the procedure, I was called to say the had canceled the interpreter and I would either have to write or use their iPad interpreter. (which I have told them were not options) I told them to call their agency to get the interpreter back. The woman I was on the phone with said no. Hanging up in frustration, I contacted my mother (a former interpreter to explain the frustration) She decided to call the same lady to help insure they understand the rights for deaf to have a live interpreter. She contacted a woman named Kathy (Phone number: 801-233-9300) She explained that she had several agency phone numbers she'd be happy to give them for a onetime on the job interpreting. Explaining that they did not need to be contracted for one-time jobs. They refused again saying only if the interpreter did it for free would they hire anyone.

Finally, morning-of, after another call, they said they would have a live interpreter and would send a text when confirmed. I never received a text. So, me and my family decided to arrive early. I arrived for my appointment 30 minutes early to discuss but through writing on loose papers they said they canceled the interpreter again and that I would be forced to write or use iPad. But when I went back for the surgery I was not allowed to write because after coming out of anesthesia it was non trustworthy. In writing I then requested a manager to talk to so I could explain that I needed a live interpreter, and that this really was unacceptable. I talked with several different people and all told me different reasons why I could not have a live interpreter with excuses including: no interpreters available, iPad was good enough, interpreter cancelled themselves, doctor cancelled the interpreter, even told it was to much money, etc. Never once they bring me a manager or supervisor.

I wrote back and forth for over an hour where they still refused me an interpreter. Frustrated, I told the receptionist I would continue to write so that I could have the procedure done (no iPad interpreter) because I really needed this procedure done and was not going to wait another month or so to set it up again. They said that was fine. I then wrote to the receptionist to give to the manager/boss that this was against several ADA Laws and that I would have to take legal action. I was then told my procedure would be cancelled unless I used their iPad interpreter. In absolute frustration I accepted the iPad so we could get this procedure over with. I had been there close to two hours by this point. Even the OR doctor tried to have me cancel the appointment because they wouldn't hire an interpreter. And my husband took off work for to watch baby in the lobby so we really couldn't afford to postpone it.

Speaking through the iPad interpreter, I refused the VRI and told them to contact another agency. Which they responded again saying they couldn't do unless the interpreter came for free because "they couldn't legally pay them for their services." Where again I was encouraged to just cancel my

appointment. I finally gave up fighting for the live interpreter and decided to get this over with and fight it later.

Doctor leaving to prep, I went back to the lobby to wait for my procedure. I asked the receptionist (Different lady this time) for the papers we had been using to write back and forth on so I could "show my husband" (real intension wanting it as proof) they said the doctors were still discussing them and that I would have to wait. I asked 4 times. Still no papers. I was then taken back to OR room where they said I could get papers when I was done.

Both my husband and 3 month old baby had to wait in the lobby, not allowed to leave because they told us "it was easier for them to get him, rather then using his video phone to call him when my procedure was over." My husband English is not good. (He is from Venezuela originally, moved here 5 years ago.) written English is not easy to understand. Which I told the doctors through the interpreter to please keep in mind when they talk to him. They would have to have a live interpreter or iPad at least, as to pass along information to him about when I'd be done or how it went. Later, after coming out of anesthesia, he told me they would only write to him. which he expressed to who was writing to him that he did not understand. But nothing was changed nor did they care and left.

Once I had woken up, they called an interpreter on the iPad to go over discharge information. But having just woken up from being under anesthesia I did not understand much of anything being said. Being very sick and groggy, focusing and understanding the interpreter was near impossible. After my operation I asked again for the papers we'd been writing on and they apologized and said they had been thrown away. After that, they then brought my husband back to sign discharge papers, give prescriptions, and sent us home.

Sincerely,


Savannah Gonzalez


cc: Jared Allebest, Attorney
UT Bar #13485
8978 South Quarry Stone Way
Sandy Utah 84094
Phone: (949) 322-3991
VP: (801) 204-9055
Jared@Allebest.com